UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOELISA ELIZABETH BREWER,

Plaintiff,

v.

**DECISION AND ORDER**
19-CV-6150S

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

1. Plaintiff Joelisa Elizabeth Brewer challenges the determination of an Administrative Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since December 23, 2009, due to post-surgical pain and limited range of motion in her neck, migraines, asthma, anxiety, and depression. Plaintiff contends that her impairments render her unable to work, and thus, she is entitled to disability benefits under the Act.

2. Plaintiff filed an application for supplemental security income on June 12, 2015, which the Commissioner denied on October 26, 2015. Plaintiff thereafter requested a hearing before an ALJ. On January 5, 2018, ALJ Brian Kane held a hearing at which Plaintiff appeared with counsel and testified. Vocational Expert Dawn Blythe also testified. At the time of the hearing, Plaintiff was 27 years old, with a limited education, and no relevant past work experience. The ALJ considered the case *de novo* and, on March 30, 2018, issued a written decision denying Plaintiff's application for benefits. The Appeals Council denied Plaintiff's request for review on December 28, 2018.

3. Plaintiff filed the current action on February 26, 2019, challenging the Commissioner's final decision.[1] On October 15, 2019, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 10). On February 12, 2020, the Commissioner filed a Motion for Judgment on the Pleadings. (Docket No. 16). Plaintiff filed a reply on March 4, 2020 (Docket No. 17), at which time the motions were taken under advisement without oral argument. For the following reasons, Plaintiff's motion will be denied, and Defendant's motion will be granted.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405 (g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

[1] The ALJ's March 30, 2018 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed"

> impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423 (d)(2)(A); 20 C.F.R. § 404.1520 (f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ found the following with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since June 12, 2015 (R. at 18);[2] (2) Plaintiff's "status post-neck injury in 2009" is a severe impairment within the meaning of the Act (R. at 18-19); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 19); (4) Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967 (b),

[2] Citations to the underlying administrative record are designated as "R."

except she requires a 5-minute change in position every hour but could continue to do work (R. at 19-22); (5) Plaintiff had no relevant past work (R. at 22); and (6) Plaintiff could perform jobs that exist in significant number in the national economy (R. at 22). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act since June 12, 2015, the date of her application. (R. at 17, 23).

10. Plaintiff first argues that the ALJ misapplied the treating-physician rule to the opinions of Dr. Robert Molinari, her treating orthopedic surgeon, and his colleague, William Gruhn, PA, who also treated Plaintiff. The treating-physician rule requires that an ALJ give controlling weight to a treating source's opinion on the issues of the nature and severity of a claimant's impairments, if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 416.927 (c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). If the ALJ does not give controlling weight to a treating source's opinion, he or she must apply several factors to determine what weight to afford the opinion, which include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree to which the medical source supported his opinion; (4) the degree of consistency between the opinion and the record as a whole; (5) whether the opinion is given by a specialist; and (6) other evidence which may be brought to the attention of the ALJ.

Morrillo v. Apfel, 150 F. Supp. 2d 540, 545-46 (S.D.N.Y. 2001); see also Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2018); 20 C.F.R. § 416.927 (c).

11. But as this Court has previously recognized, an ALJ “does not have to explicitly walk through these factors, so long as the Court can ‘conclude that the ALJ

applied the substance of the treating physician rule . . . and provide[d] 'good reasons' for the weight [the ALJ] gives to the treating source's opinion.'" Hall v. Colvin, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (quoting Halloran, 362 F.3d at 32); see Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (explaining that ALJ need not undertake a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear"). If the ALJ rejects the treating physician's opinion as controlling, he or she must have "good reasons" for doing so and must explain those reasons to the claimant. 20 C.F.R. § 416.927 (c)(2); accord Schaal v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998).

12. Dr. Molinari examined Plaintiff once before completing the physical-assessment forms at issue. (R. at 1281-1297 (March 30, 2017 treatment notes); 771-774 (April 3, 2017 assessment); 1340-1344 (December 27, 2017 assessment)). Plaintiff had, however, previously been seen by Dr. Molinari's colleague in the same practice, William Gruhn, PA. (R. at 1269-1280.) Both Dr. Molinari and PA Gruhn treated Plaintiff for neck pain stemming from her 2010 C5-C6 anterior cervical discectomy and fusion. (R. at 20.)

13. On October 20, 2016, PA Gruhn completed a physical-assessment form. (R. at 775-779.) Therein, PA Gruhn indicated that Plaintiff had been treating at his practice since December 2009, and that he had evaluated Plaintiff three times in the past 12 months, with his last examination occurring on June 10, 2015. (R. at 775.) PA Gruhn's assessment at that time was that Plaintiff "can't work" and was permanently unable to work due to "plate in neck." (R. at 776.) In assessing her functioning, he determined that Plaintiff had no limitation in sitting, seeing, hearing, or speaking for more than 4 hours; moderate limitations on walking and standing (2-4 hours); and very limited limitations in

pushing, pulling, bending, and ability to lift and carry (1-2 hours). (R. at 778.) PA Gruhn opined that Plaintiff had reached the point of maximal medical improvement, and that her chronic neck pain rendered her unable to work in any capacity. (R. at 779.)

14. About five months later, on March 30, 2017, Plaintiff saw Dr. Molinari for re-evaluation after continuing to experience post-surgical neck pain. (R. at 1281-1297.) Dr. Molinari noted that Plaintiff's X-rays showed degeneration above her fusion at C4-C5. (R. at 1286.) And while he noted that Plaintiff had normal motor sensory and reflex function in her arms and a normal gait, he found reduced and painful range of motion in her neck. (Id.) Dr. Molinari concluded that Plaintiff's neck pain was secondary to the degenerative changes occurring above the fusion point. (Id.)

15. Several days following this examination, Dr. Molinari completed a physical-assessment form. (R. at 771-774.) In the April 3, 2017 form, Dr. Molinari opined that Plaintiff had a "permanent partial disability" due to chronic neck pain, but could perform light-duty work. (R. at 772.) He further indicated that Plaintiff was "very limited" in walking, standing, sitting, pushing, pulling, bending, seeing, hearing, speaking, and lifting and carrying (1-2 hours). Nearly nine months later, Dr. Molinari reiterated this exact opinion in his December 27, 2017 physical-assessment form. (R. at 1340-1344).

16. The ALJ afforded little weight to the opinions of Dr. Molinari and PA Gruhn because he found them "internally inconsistent, indicating that the claimant cannot work and then assigning functional limitations." (R. at 21.) The ALJ also found these opinions inconsistent with the normal findings on musculoskeletal and neurological examinations. (Id.) He further discounted PA Gruhn's opinion because it was provided more than one

year after he last examined Plaintiff. (Id.) Upon review, this Court finds that substantial evidence supports the ALJ's treatment of these opinions.

17. First, the ALJ's finding that Dr. Molinari's opinion is internally inconsistent is supported by substantial evidence. Although opining that Plaintiff has a permanent partial disability due to chronic neck pain, Dr. Molinari nonetheless found that Plaintiff could work so long as she was provided the reasonable accommodation of "light duty." (R. at 772.) This finding is inconsistent with Dr. Molinari's subsequent severe functional-limitation findings, which themselves are of little value. For example, nothing in the record supports Dr. Molinari's opinion that Plaintiff's ability to sit, see, hear, and speak must be limited to 1-2 hours per day, particularly when PA Gruhn found no evidence of any limitations just five months earlier. (Compare R. at 774 with R. at 778.) Rather, it appears that Dr. Molinari globally circled "very limited" for the listed functional limitations without any individualized assessment, further detracting from the value of his findings. (R. at 774.) These internal inconsistencies coupled with the normal musculoskeletal and neurological findings in the record support the ALJ's treatment of Dr. Molinari's opinion.

18. Second, this Court finds no error in the ALJ's consideration of PA Gruhn's opinion. As the ALJ noted, that opinion was based on an examination that occurred 15 months prior. (R. at 775.) Moreover, the opinion is inconsistent with Dr. Molinari's subsequent opinion that Plaintiff could perform light-duty work and his findings of normal musculoskeletal and neurological functioning. (R. at 772.) Thus, the ALJ committed no reversible error.

19. Plaintiff next argues that the ALJ erred by not considering the *complete* opinion of Harbinder Toor, M.D., who examined Plaintiff for the Monroe County

Department of Social Services on July 13, 2017. (R. at 1335-1338.) Dr. Toor found no limitations on Plaintiff's ability to work. (R. at 1336.) He did, however, note the possibility that Plaintiff might require a reasonable accommodation because "the migraine headache can interfere with her routine," which the ALJ did not address. (R. at 21, 1338.)

20. Plaintiff maintains that the ALJ erred by not incorporating a migraine-related limitation into her RFC. This Court finds no error. While Dr. Toor noted that migraines could interfere with Plaintiff's routine, he found that Plaintiff was not precluded from full-time work, and he did not assign any functional limitations based on migraines. (R. at 1336.) Moreover, Plaintiff points to no other doctor who opined that migraines impacted her ability to work, and Plaintiff herself testified that she treated her headaches with only Tylenol. (R. at 20, 130.) Further, the ALJ noted at Step 2 that there was no brain imagining or any other evidence of ongoing, consistent care for migraines or any resulting limitations therefrom. (R. at 19.) In any event, the ALJ restricted Plaintiff's RFC beyond what Dr. Toor opined, finding her capable of only light work, rather than medium work. Accordingly, this Court finds no error.

21. Finally, Plaintiff argues that the ALJ erred by failing to explain and support his RFC determination, specifically the restriction requiring a 5-minute change in position every hour. That restriction, however, is supported by Plaintiff's own testimony, wherein she stated that she needed to take frequent breaks when working. (R. at 120.) It also formed the basis of a hypothetical posed to the Vocational Expert. (R. at 133.) The ALJ's consideration of Plaintiff's testimony and his inclusion of a restriction based thereon is further consistent with his obligation to consider Plaintiff's own assessment of her limitations in formulating her RFC. 20 C.F.R. §§ 416.945 (a)(3), 416.913 (a)(4). While

the ALJ could better have articulated this connection, this Court finds insufficient basis for remand when the restriction is based on substantial evidence in the record.

22. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's motion for judgment on the pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 16) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: July 29, 2020
Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge